IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JOHN WILLIAM SCHARNHORST, III                                                      PLAINTIFF

v.                           Civil No. 5:22-CV-05176

CHIEF DEPUTY JAY CANTRELL, Washington County
Detention Center (WCDC); MAJOR RANDALL DENZER,
WCDC; CORPORAL TOM MULVANEY, WCDC;
CORPORAL SAM CAUDLE, WCDC; DEPUTY TYLER BECK,
WCDC; DEPUTY PHIPPS, WCDC; DEPUTY RAINES, WCDC;
SERGEANT WELCHEL, WCDC; CORPORAL CARPENTER, WCDC;
DEPUTY MISENHIMER, WCDC; DEPUTY SELF, WCDC;
CORPORAL DOMINIC NUNZIATO, WCDC;
DEPUTY LEEN, WCDC; DEPUTY REDMOND, WCDC;
DEPUTY FRYE, WCDC; DEPUTY EDGE, WCDC;
CORPORAL KRADDUCK, WCDC; and
DEPUTY NUNZIATO (FIRST NAME UNKNOWN), WCDC                      DEFENDANTS

**REPORT AND RECOMMENDATION**

Plaintiff John William Scharnhorst, III, a prisoner, filed this civil rights action under 42 U.S.C. § 1983, generally alleging that the Defendants are endangering his health by failing to comply with COVID-19 protocols in violation of his constitutional rights. (ECF No. 7). Even at this early stage of his litigation, Plaintiff has engaged in extensive motion practice, including filing three motions for injunctive relief. (ECF Nos. 5, 9 & 14). This Court recommended denying those requests, (ECF No. 16), and the Honorable Timothy L. Brooks adopted that recommendation over Plaintiff's objection. (ECF No. 18).

This matter comes again before the Court on Plaintiff's fourth motion for injunctive relief.

(ECF No. 23). Having received the Defendants' response and brief in opposition to Plaintiff's motion, (ECF No. 30 & 31), this matter is now ripe for consideration. For all the reasons outlined below, this Court recommends that Plaintiff's motion for injunctive relief be denied.

## I.     BACKGROUND

Plaintiff has filed five civil rights actions in this District related to his pretrial detention at the Washington County Detention Center, Fayetteville, Arkansas. *See Scharnhorst v. Cantrell et al.*, 5:22-CV-05138-TLB-MEF (W.D. Ark. July 15, 2022); *Scharnhorst v. Helder, et al.*, 5:22-CV-05167-TLB-CDC (W.D. Ark. Aug. 10, 2022); *Scharnhorst v. Cantrell, et al.*, 5:22-CV-05218-TLB-CDC (W.D. Ark. Oct. 19, 2022); *Scharnhorst v. Cantrell et al.*, 5:22-CV-05232-TLB-MEF (W.D. Ark. Nov. 28, 2022). In addition to the three motions for injunctive relief in this matter, Plaintiff has filed multiple requests for injunctive relief in his other cases. *See, e.g.*, *Scharnhorst*, Motion for Preliminary Injunction, 5:22-CV-05218-TLB-CDC (W.D. Ark. Nov. 23, 2022) (ECF No. 7), Motion for Temporary Restraining Order, 5:22-CV-05218-TLB-CDC (W.D. Ark. Dec. 7, 2022) (ECF No. 9); *Scharnhorst*, Motion for Temporary Restraining Order, 5:22-CV-05138-TLB-MEF (W.D. Ark. Nov. 21, 2022) (ECF No. 23).

The present motion for injunctive relief is substantially similar to his motion for injunctive relief in *Scharnhorst*, 5:22-CV-05138-TLB-MEF (W.D. Ark. Nov. 21, 2022) (ECF No. 23). In both cases, Plaintiff alleges that WCDC personnel have been harassing him in retaliation for filing civil rights lawsuits against them. Here, Plaintiff specifically alleges that Deputy Eric Frye has been harassing him and that he has reported this harassment, but it has not been addressed. (ECF No. 23 at p. 1). Plaintiff contends that even though he has filed grievances about being housed in a cell with a broken light, Deputy Nunziato, Deputy Beck, and Deputy Frye have harassed him,

"accusing him of tampering with the light" and have threatened him with "physical or disciplinary action." *Id.* Plaintiff describes one instance where Deputy Frye came into his cell and started questioning him about a motion he was composing. Plaintiff contends that even though he did not look up or acknowledge him, Deputy Frye began "accosting" him. *Id.* As further evidence of harassment, Plaintiff claims that Deputy Frye entered his cell, threw his clean clothes on the floor, and began searching his cell, looking for contraband. *Id.* Plaintiff alleges that despite his best efforts, Deputy Frye found only the washcloths Plaintiff uses to keep his cell clean and the combs he uses as hangers to dry the washcloths. *Id.* Plaintiff requests a court order directing the Sheriff to stop these deputies from harassing him. *Id.*

Defendants deny the allegations, (ECF No. 30), and contend Plaintiff has not met his burden of establishing that preliminary injunctive relief is warranted. *Id.*

## II.     LEGAL STANDARD

Rule 65 of the Federal Rules of Civil Procedure applies to motions for injunctive relief. Fed. R. Civ. P. 65. In determining whether to grant such motions, courts consider the following *Dataphase* factors: (1) the probability of success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between this harm and the injury granting the injunction will inflict on other interested parties; and (4), whether the issuance of an injunction is in the public interest. *Dataphase Systems, Inc. v. C. L. Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc); s*ee also Minnesota Mining and Mfg. Co. v. Rauh Rubber, Inc.*, 130 F.3d 1305, 1307 (8th Cir. 1997); *Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 485-86 (8th Cir. 1993).

While no single factor is dispositive, "the two most critical factors for a district court to

3

consider in determining whether to grant a preliminary injunction are (1) the probability that plaintiff will succeed on the merits, and (2) whether the plaintiff will suffer irreparable harm if an injunction is not granted." *Chicago Stadium Corp. v. Scallen*, 530 F.2d 204, 206 (8th Cir. 1976). The Court, moreover, is mindful that "in the prison context, a request for injunctive relief must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Goff v. Harper*, 60 F.3d 518, 520-21 (8th Cir. 1995).

### III.    ANALYSIS

The purpose of a preliminary injunction in a lawsuit is to "preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (citing *Dataphase v. Sys., Inc., v. C.L. Sys., Inc.*, 640 F.2d 109, 113 & n.5 (8th Cir. 1981) (en banc). Thus, "a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Id.* (citing *Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1185 (10th Cir. 1975)). The moving party –in this case, the Plaintiff – bears the burden of proving a preliminary injunction is warranted. *See Goff*, 60 F.3d at 520.

Here, the TRO alleges that WCDC personnel have been harassing Plaintiff in retaliation for filing this lawsuit. (ECF No. 23). This claim, however, is wholly unrelated to the basis for Plaintiff's lawsuit: Defendants' purported failure to comply with COVID-19 protocols thereby endangering Plaintiff's health in violation of his constitutional rights. (ECF No. 7). Because there is no connection between the retaliation claims asserted in Plaintiff's motion for TRO and the conduct asserted in his Amended Complaint, the retaliation claims cannot form the basis for

injunctive relief. *See Hale v. Wood*, 89 F.3d 840, 840 (8th Cir. 1996) (per curiam) ("We reject [Plaintiff's] contention that defendants' allegedly threatening and retaliatory behavior mandate granting injunctive relief, because [Plaintiff] failed to establish a connection between these injuries and the conduct he challenged in the complaint."); *Devose*, 42 F.3d at 471 (concluding that retaliation claims cannot establish grounds for a TRO because they are are entirely different from the claims raised in the complaint). Accordingly, Plaintiff's TRO motion fails as a matter of law.

## IV. CONCLUSION

For the reasons outlined above, the undersigned recommends that Plaintiff's Motion for Temporary Restraining Order (ECF No. 23) be **DENIED**.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 14th day of December 2022.

                                                  *Christy Comstock*
                                          CHRISTY COMSTOCK
                                          UNITED STATES MAGISTRATE JUDGE